IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

GILBERTO FIGUEROA PEREA,

Plaintiff

v.                                                    CIVIL 08-1286 (DRD) (JA)

COMMISSIONER OF SOCIAL SECURITY,

Defendant

OPINION AND ORDER

On March 7, 2008, plaintiff filed this petition for judicial review of a final decision of the Commissioner of Social Security which denied his application for a period of disability and Social Security disability insurance benefits.   The Commissioner filed a memorandum in support of the final decision on December 10, 2008 (Docket No. 6) and plaintiff filed a memorandum against such final decision on February 20, 2009.   (Docket No. 9.)

The only issue for the court to determine is whether the final decision that plaintiff is not under a disability is supported by substantial evidence in the record when looking at such record as a whole.   In order to be entitled to such benefits, plaintiff must establish that he was disabled under the Act at any time on or before March 31, 2004, when he last met the earnings requirements for disability benefits under the Social Security Act.   See Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 140 n.3 (1st Cir. 1987).

CIVIL 08-1286 (DRD) (JA)                    2

After evaluating the evidence of record, the Appeals Council entered the following findings:

1.  The claimant met the special earnings requirements of the Act on March 28, 2001, the date he stated he became unable to work and met them through March 31, 2004.  The claimant has not engaged in substantial gainful activity since his alleged onset date.

2.  The claimant has the following severe impairments: back pain and depression, but does not have an impairment or combination of impairments which is listed in, or which is medically equal to an impairment listed in 20 CFR Part 404, Subpart P of Appendix 1.

3.  The claimant's impairment results in the following limitations on his ability to perform work-related activities: the claimant is able to perform unskilled light work with postural limitations.  In view of the above limitations, the claimant has the residual functional capacity to perform a reduced range of the light exertional level.

4.  The claimant's subjective complaints are partially credible.

5.  The claimant is unable to perform past relevant work as a mason and construction helper because of physical and mental demands of this work exceed his determined residual functional capacity.

6.  Prior to May 15, 2004, the claimant was under age 50, which was considered to be a younger individual.  As of May 15, 2004 the claimant is considered to be an individual "closely approaching advanced age."

7.  The claimant is illiterate and unable to communicate in English.  The claimant's past relevant work is unskilled to semi-skilled in nature.  The claimant has no skills that are transferable to skilled or semiskilled occupations within his residual functional capacity.

8.  Based on the claimant's age, education and work experience, if the claimant had the capacity to perform the full range of the light exertional level, 20 CFR 404.1569 and Rule 202.16 in Table No. 2 of 20 CFR Part 404, Subpart P, Appendix 2, would direct a conclusion of "not disabled" before March 31, 2004.  Although the claimant's exertional and nonexertional

CIVIL 08-1286 (DRD) (JA)                    3

> limitations do not allow him to perform the full range of the light exertional level, using the above-cited Rule as a framework for decisionmaking, there are a significant number of jobs in the national economy which he could perform.
>
> As of March 31, 2004, based on a change in age category, Rule 202.09 directs a finding that the claimant is disabled (20 CFR 404.1520(f)).
>
> 9.   The claimant has been disabled as defined in the Social Security Act since March 31, 2004, but not prior thereto.

Tr. at 14-15.

The Appeals Council had granted a request for review of a final decision of an administrative law judge dated December 27, 2005, and held that the administrative law judge had employed the Medical-vocational rules too mechanically with respect to plaintiff's age.  The Appeals Council found plaintiff disabled on March 31, 2004, denying benefits prior to that date.

Plaintiff has the burden of proving that he is disabled within the meaning of the Social Security Act.  See Bowen v. Yuckert, 482 U.S. 137 (1987).  A finding of disability requires that plaintiff be unable to perform any substantial gainful activity or work because of a medical condition which has lasted or which can be expected to last for a continuous period of at least twelve months.  See 42 U.S.C. § 416(i)(1).  In this particular case, because of a change in age category, Rule 202.09 directs a finding that plaintiff is disabled.  In general terms, evidence of a physical or mental impairment or a combination of both is insufficient for the

CIVIL 08-1286 (DRD) (JA)                4

Commissioner to award benefits.  There must be a causal relationship between such impairment or impairments and plaintiff's inability to perform substantial gainful activity.  See McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1120 (1st Cir. 1986).  Partial disability does not qualify a claimant for benefits. See Rodríguez v. Celebrezze, 349 F.2d 494, 496 (1st Cir. 1965).

Plaintiff argues in his memorandum of law that the decision of the Commissioner is not supported by substantial evidence taking the record as a whole, using the medical-vocational guidelines ("the GRID") incorrectly and also incorrectly weighing the evidence of pain.  Plaintiff concludes that at very least a medical expert was required at the hearing to enable the administrative law judge to translate medical evidence into functional terms.

Plaintiff claims that he became disabled before March 31, 2004, that is, on March 28, 2001, due to major depression and back problems, caused by bilateral radiculopathy at the L5-S1 vertebra, lumbar strain, scoliosis and spondylosis.  He is forgetful and unable to concentrate.  He arguably cannot sit, stand, or walk for long, and cannot walk without a cane.  He cannot perform household chores, and his social life has worsened.  His legs and back hurt, his right leg sometimes felt numb and cramped.  He could not take care of his personal needs.

CIVIL 08-1286 (DRD) (JA)                5

Plaintiff was 49 years old on the date he was last insured for purposes of disability insurance benefits.  He turned 50 on May 15, 2004.  He has a G.E.D. and has past relevant work as an assistant carpenter and mason.

Plaintiff received treatment for his mental condition between September 1, 1999 and January 13, 2004.  (Tr. at 405.)  He suffered from anxiety, depression and insomnia.  On April 28, 2001, plaintiff had root compression at L5-S1 vertebra and degenerative vertebra at L1-L2.  On February 26, 2002, plaintiff was reported to have nephro lithiasis at the L5-S1 vertebra, a herniated disc, and spondylosis.  On October 29, 2002, plaintiff had an MRI which revealed problems with L5-S1 and spondylosis.  Progress notes of February 11, 2003 showed lumbar strain herniated nucleus pulposus, bulging disc at L1-L2 and spondylosis L/S grade 5.  On May 14, 2003, there was straightening of the lumbar spine and decreased height of L5-S1 with associated sclerosis.  Dr. Méndez diagnosed chronic lumbalgia and lumbosacral syndrome.  A special report dated March 17, 2004 showed prognosis for the back condition to be poor.  Plaintiff would use either a cane or crutches.

A physical residual functional capacity assessment completed by Dr. Idalia Pedroza López on June 25, 2003 reflected no significant exertional limitations.  There were no postural, manipulative or environmental limitations.  (Tr. at 245-52.)  Dr. José R. Pesquera García concurred with this assessment.  (Tr. at 349.)

CIVIL 08-1286 (DRD) (JA)                6

A consultative psychiatric report dated July 10, 2003 concludes that plaintiff was depressed with psychomotor retardation, with difficulty walking, and with use of a cane.  The diagnosis by Dr. Alberto Rodríguez Robles reflected a prognosis of poor and the doctor felt plaintiff could not handle his own funds.

A psychiatric review technique form prepared by a non-examining physician suggested plaintiff suffered from non-severe depression that imposed mild restrictions in activities of daily living, social functioning, and the ability to maintain concentration, persistence and pace.   (Tr. at 265, 268, 275.) Dr. Armando Caro made a reserved prognosis on January 20, 2004 and a diagnosis of major depression.

On January 29, 2004, Dr. Cruz Estrada noted a claim by plaintiff based upon a work related injury.  The State Insurance Fund of Puerto Rico awarded plaintiff a 15% compensation for his back injuries based upon restrictions of movement.

On November 10, 2004, Dr. Japhet Gaztambide reported that plaintiff exhibited numerous symptoms of a mental condition.  He was extremely limited in his mental/emotional capabilities. (Tr. at 401-02.) The psychiatrist considered 20 factors and found plaintiff extremely limited in each, including remembering and carrying out short and simple instructions and making simple work related decision.  The expert also indicated that plaintiff could manage benefits in his own interest.  He noted that plaintiff did not respond well to treatment, and was

CIVIL 08-1286 (DRD) (JA)                    7

prevented from attending work at least four days a month.  He issued a guarded

prognosis, and noted that plaintiff had suffered the diagnosed limitations since

September 1, 1999.  (Tr. at 400-03.)  The diagnosis was DSM-IV 296.33 (major

depressive disorder, recurrent, severe without psychotic features).

ADMINISTRATIVE LAW JUDGE

The Commissioner of Social Security applies a five-step sequential inquiry

into whether or not an applicant for benefits should be considered disabled and

thus eligible for benefits. 20 C.F.R. § 404.1520 (1985); see Mercado-Pumares v.

Comm'r of Soc. Sec., 286 F. Supp. 2d 197, 199 (D.P.R. 2003).  The inquiry

requires a consideration of the claimant's residual functional capacity as well as

the claimant's age, education, and past work experience to see if the claimant can

do other work.  If the claimant cannot, a finding of disability will follow.  See 20

C.F.R. § 404.1520(f).  The administrative law judge ended the sequential inquiry

at step five.  At this level, it has already been determined that the claimant cannot

perform any work he has performed in the past due to a severe impairment or

combination of impairments.  At step five, the Commissioner bears the burden of

determining that significant jobs exist in the national economy given the above

factors.  See Nguyen v. Chater, 172 F.3d 31 (1st Cir. 1999); Lancelotta v. Sec'y

of Health & Human Servs., 806 F.2d 284 (1st Cir. 1986); Vázquez v. Sec'y of

Health & Human Servs., 683 F.2d 1, 2 (1st Cir. 1982).

CIVIL 08-1286 (DRD) (JA)                    8

    The administrative law judge acknowledged allegations of severe, nonexertional impairments.  These were required to be considered under SSR 96-7p and circuit case law.  See Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 20-21 (1st Cir. 1986).  The factors to be weighed under the correct standard are the following:

| | |
|---|---|
| (i) | Your daily activities; |
| (ii) | The location, duration, frequency, and intensity of your pain or other symptoms; |
| (iii) | Precipitating and aggravating factors; |
| (iv) | The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; |
| (v) | Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; |
| (vi) | Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and |
| (vii) | Other factors concerning your functional limitations and restrictions due to pain or other symptoms. |

20 C.F.R. § 404.1529(c)(3); see also SSR 96-7p.

    The administrative law judge noted in his rationale that medical records failed to reveal any swelling, deformities, significant limitations in range of motion of major joints, including extremities.  (Tr. at 26.)  Some muscular spasms  and spine rigidity were found.  There was no atrophy in the lower extremities.  The cane was used in case of knee buckling.  The administrative law judge noted that the objective evidence of record before March 31, 2004 established symptoms but

CIVIL 08-1286 (DRD) (JA)                    9

not to the extent alleged.  The administrative law judge relied on plaintiff's reaction to prescribed treatment without adverse side effects and also the absence of musculoskeletal or mental pathology.  Plaintiff received conservative treatment and no ongoing physical therapy or pain management clinics were prescribed. (Tr. at 27.)  While "complaints of pain need not be precisely corroborated by objective findings, . . . they must be consistent with medical findings."  See Depuis v. Sec'y of Health & Human Servs., 869 F.2d 622, 623 (1st Cir. 1989). Furthermore, the administrative law judge noted in his rationale that plaintiff gave a good historical account of his vocational and medical profile to the treating physicians, the consultant evaluators and the disability interviewers.  (Tr. at 26, 87-102, 103-24, 182-98).

                              APPEALS COUNCIL

        The Appeals Council considered plaintiff's subjective complaints and adopted the administrative law judge's conclusions.  The Appeals Council reweighed the evidence of mental and physical residual functional capacity and medical evidence because some opinions did not consider additional evidence introduced into the record after their issuance.  (Tr. at 13.)

        Plaintiff turned 50 less than two months after the date he was last insured under the Social Security Act, and was considered to be a person closely approaching advanced age, and thus disabled as of the date last insured.  Plaintiff

CIVIL 08-1286 (DRD) (JA)                    10

alleges that he became disabled on March 28, 2001, a claim that was denied completely by both the administrative law judge and the Appeals Council.  The Appeals Council then favored plaintiff's position in part, based upon the natural aging process.  While plaintiff argues that there was no testimony of a medical expert to translate medical evidence into functional terms, there were at least a physical residual functional capacity assessment and a psychiatric review technique form which helped the administrative law judge in making such a translation.  This is a record full of contrasting evidence and  varying treatment for pain and a mental condition but plaintiff has never been hospitalized for his mental condition.   Weighing conflicting evidence is within the realm of the administrative law judge.  The Appeals Council agreed for the most part with the administrative law judge's findings but did not adopt the administrative law judge's conclusion regarding the degree to which plaintiff's mental impairment restricts his daily activities, prevents difficulties in maintaining social functioning, results in deficiencies in concentration, persistence and pace, and produces episodes of deterioration or decompensation in work or work-like settings.  The administrative law judge noted that plaintiff continued to be logical, relevant, coherent and well-oriented and that plaintiff's affect, judgment, memory, thought process and thought content were not significantly impaired.  (Tr. at 27, 253-63, 350-99.)   This conclusion was made after reviewing the medical records of

CIVIL 08-1286 (DRD) (JA)                    11

treatment covering the period from September 1, 1999 to November 10, 2004, as well as the psychiatric evaluation of Dr. Alberto Rodríguez Robles.  (Tr. at 753-63.)

        The administrative law judge gave little weight to the medical assessment of Dr. Japhet Gaztambide for being inconsistent with the medical evidence of record.  "Generally, the [administrative law judge] gives 'more weight to the opinions from the claimant's treating physicians, because these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's medical impairments.' 20 C.F.R. § 404.1527(d)(2)." Berríos Vélez v. Barnhart, 402 F. Supp. 2d 386, 391 (D.P.R. 2005).  The judge will "give controlling weight to the opinions of treating physicians if well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record." Id.  The administrative law judge noted that conclusion of a "severe" mental condition is inconsistent when there is little evidence to support the assessments for the period at issue. (Tr. at 28.)  In this circuit, "'[w]hen a treating doctor's opinion is inconsistent with other substantial evidence in the record, the requirement of 'controlling weight' does not apply." Id. (quoting Shaw v. Sec'y of Health & Human Servs., 25 F.3d 1037 (Table), 1994 WL 251000, at *3 (1st Cir. 1994)).

CIVIL 08-1286 (DRD) (JA)                    12

    While the administrative law judge at times must compare the opinions of treating and non-treating or non-examining physicians, it is well settled that the opinions of treating physicians are not necessarily entitled to greater weight merely because they are those of treating physicians.  Rodríguez Pagán v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Sitar v. Schweiker, 671 F.2d 19, 22 (1st Cir. 1982); Pérez v. Sec'y of Health, Educ. & Welfare, 622 F.2d 1, 2 (1st Cir. 1980); Rosado-Lebrón v. Comm'r of Soc. Sec., 193 F. Supp. 2d 415, 417 (D.P.R. 2002).  The conclusion of the Commissioner is in part supported by the psychiatric review technique form and physical residual functional capacity assessment in the record.  Between September 1999 and January 2004, plaintiff received sporadic treatment for his mental condition at a mental health clinic.  The medical records reflect differing degrees of impairment.  A longitudinal review of the medical evidence revealed that plaintiff was logical, coherent, relevant and well-oriented.  (Tr. at 27.)  Considering the reports of Dr. Alberto Rodríguez Robles,  Dr. Armando Caro and the report of Dr. Japhet Gaztambide,  probably the strongest reflection of a mental impairment is the evaluation of Dr. Gaztambide.  However, his report was weighed by the administrative law judge against other evidence of record and that weighing is reasonable.

CIVIL 08-1286 (DRD) (JA)                    13

   Plaintiff turned 50 on May 16, 2004, so he was "closely approaching advanced age,"[1] and May 15, 2004 was less than two months after his date last insured for disability purposes.  The Appeals Council considered him under a more favorable standard, closely approaching advanced age, rather than finding him to be a younger individual.[2]  See 20 C.F.R. § 404.1563.

   Both the administrative law judge and the Appeals Council used the GRID as a framework for decision-making, notwithstanding the argument that the Commissioner incorrectly used the GRID.   In relation to plaintiff's residual functional capacity, when a nonexertional limitation is found to impose no significant restriction on the range of work a claimant is exertionally able to perform, reliance on "the GRID" is appropriate.  If the applicant's limitations are exclusively exertional, then the Commissioner can meet his burden under the sequential inquiry at step five of the process through the use of a chart contained in the Social Security regulations.   20 C.F.R. § 416.969; Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, App. 2, tables 1-3 (2001), cited in 20 C.F.R. § 416.969; Heckler v. Campbell, 461 U.S. 458 (1983).  If the facts of the

_____

   [1]"Person closely approaching advanced age.  If you are closely approaching advanced age (age 50-54), we will consider that your age along with a severe impairment(s) and limited work experience may seriously affect your ability to adjust to other work."  20 C.F.R. §404.1563(d)

   [2]"Younger person.   If you are a younger person (under age 50), we generally do not consider that your age will seriously affect your ability to adjust to other work. . . ."  20 C.F.R. § 404.1563(c).

CIVIL 08-1286 (DRD) (JA)               14

applicant's situation fit within the GRID's categories, the GRID "directs a conclusion as to whether the individual is or is not disabled." 20 C.F.R. pt. 404, subpt. P, App. 2, § 200.00(a), cited in 20 C.F.R. § 416.969. "However, if the applicant has nonexertional limitations (such as mental, sensory, or skin impairments, or environmental restrictions such as an inability to tolerate dust, id. § 200(e)) that restrict his ability to perform jobs he would otherwise be capable of performing, then the Grid is only a 'framework to guide [the] decision,' 20 C.F.R. § 416.969a(d) (2001)." Seavey v. Barnhart, 276 F.3d 1, 6 (1st Cir. 2001).   Nevertheless "the more that occupational base is reduced by a nonexertional impairment, the less applicable are the factual predicates underlying the Grid rules, and the greater is the need for vocational evidence." Candelario v. Comm'r of Soc. Sec., 547 F. Supp. 2d 92, 99 (D.P.R. 2008); see Burgos López v. Sec'y of Health & Human Servs., 747 F.2d 37, 42 (1st Cir. 1984); cf. Vélez-Ramos v. Astrue, 571 F. Supp. 2d 301, 305 (D.P.R. 2008).  There is no doubt that the administrative law judge and the Appeals Council painstakingly reviewed the evidence of record.  Indeed the Appeals Council adopted the greater part of the administrative law judge's rationale but rejected or gave little weight to the reports of medical consultants who made findings of fact after reviewing the record since those opinions did not consider additional evidence that was introduced in the record after they were issued.  (Tr. at 13.)  The GRID was

CIVIL 08-1286 (DRD) (JA)               15

adequately used as a framework for decision making considering the administrative law judge's relying on such factors as plaintiff's own accounts of his vocational and medical profile and the conflicts in the evidence.

There is no practical difference between the findings of the administrative law judge and those of the Appeals Council, except that the latter favored plaintiff. The rationale of the Appeals Council is thorough, as is the rationale of the administrative law judge as adopted by the Appeals Council.  Looking at the evidence as a whole,  I cannot decide that there is good cause to remand the case to the Commissioner.  In view of the above, the complaint is dismissed.  The Clerk is directed to enter judgment accordingly.

At San Juan, Puerto Rico, this 21st day of August, 2009.

                              S/ JUSTO ARENAS
                    Chief United States Magistrate Judge